[Civ. No. 17386. First Dist., Div. Two. Nov. 21, 1957.]

JOHN P. O'SHEA et al., Respondents, v. TILE LAYERS UNION, LOCAL 19, et al., Appellants.

P. H. McCarthy, Jr., F. Nason O'Hara and Herbert S. Johnson for Appellants.

Wallace B. Colthurst and Orlando J. Bowman for Respondents.

DRAPER, J.—This is an action for injunction and damages under the Cartwright Act (Bus. & Prof. Code, §§ 16700-16758). Plaintiffs are tile contractors, and are nine of the approximately 25 members of Tile Contractors Association of Northern California, Inc. (hereinafter called "association"). Defendant Peninsula Tile Contractors Association has about 30 tile contractor members, who do business principally in San Mateo, Santa Clara and San Benito Counties. Defendant Tile Layers Union, Local 19, has jurisdiction extending to 16 counties of Northern California. The remaining defendants are officers and members of defendant union. Upon affidavits and brief oral testimony preliminary injunction was issued. Defendants appeal from that injunction and the order granting it.

Association and union were parties to a collective bargaining agreement which was to expire March 31, 1956. The agreement between union and Peninsula, by its terms, was to continue into 1957. However, it was reopened a year before its expiration date, and the parties then added a provision that "in order to protect the public from failures resulting from inferior installations, no tile will be applied in any shower, tub back, or other area exposed to water unless setting beds are first installed in mortar backing by qualified tile layers." In its negotiations with association, the union sought a comparable provision, which association refused. Picketing of respondents' business places began, and this action was commenced.

It appears that the "conventional" method of installing ceramic tile is in mortar. In recent years, a method of installing tile by use of mastic adhesives has been developed. This method permits use of gypsum and plasterboard backings. Many pages of the affidavits in this case are devoted to the respective merits of the two methods. Appellants do not object to the use of mastic, but contend that affixing of tile to plasterboard and gypsum backings results in "failures" because the backings deteriorate when water reaches them. Respondents assert that, when properly used, this method results in fewer failures than does the mortar backing method. Each side insists it is serving the public interest, appellants in preventing the falling of the homeowner's shower tile, and respondents in saving him money while preventing the addition of tile to his bathwater. It would seem that this issue should be determined by the building codes or in the market, rather than the courts. However, to the extent that it is relevant, the issue has been determined against appellants in the trial court. Under long established rules, it is the trial, rather than the appellate, court which resolves the fact issues.

The statute here in question prohibits "a combination of capital, skill or acts . . . to create or carry out restrictions in trade or commerce" (Bus. & Prof. Code, § 16720, subd. (a)), and authorizes civil action by "any person who is injured in his business or property" by such combination (Bus. & Prof. Code, § 16750). ■ Although the act does not specifically provide for injunctive relief, such relief is available to one injured by a violation of the Cartwright Act (*Kold Kist, Inc.* v. *Amalgamated Meat Cutters etc., Local No. 421,* 99 Cal. App.2d 191 [221 P.2d 724]).

In the case at bar, there is some evidence that it was Peninsula which sought and secured the contract provision limiting use of mastic adhesives upon plasterboard or gypsum backings. There is also some evidence that respondents compete with the members of Peninsula, and that their competition will be restricted if they are unable to use the assertedly cheaper method of plasterboard backing. On appeal from granting of a preliminary injunction, we do not have the benefit of findings. There was evidence contradicting that summarized above, but we must assume that the trial court resolved the conflict in respondents' favor. The evidence, thus viewed, could warrant an inference that appellants' combination was formed to restrict trade.

Appellants argue that the restriction here is merely upon the use of mastic adhesives, and not upon trade or commerce in them. They cite federal cases (*Industrial Association* v. *United States,* 268 U.S. 64 [45 S.Ct. 403, 69 L.Ed. 849]; *United States* v. *Bay Area Painters etc. Committee,* 49 F.Supp. 733) for the rule that restriction of the use of a commodity is not restriction upon its sale. But those cases deal with the federal antitrust acts, and hold that limitation upon local use of a product manufactured outside this state is not a restriction upon interstate trade in the product. Here the gravamen of the complaint is not the limitation of sales of mastic adhesives, but is the restriction of use of a construction method in the building of houses. ■ The business of installing tile is itself trade or commerce. The Cartwright Act embraces far more than the mere sale of tangible commodities (*Speegle* v. *Board of Fire Underwriters,* 29 Cal.2d 34 [172 P.2d 867]). ■ Of course, whether that trade or commerce is restricted turns upon fact issues.

Appellants also argue that the Cartwright Act does not apply to a combination of laborers for the purpose of improving conditions of employment. "[L]abor . . . is not a commodity" within the meaning of the act (Bus. & Prof. Code, § 16703). Full freedom of employees to associate to negotiate the terms and conditions of their employment is the declared policy of this state (Lab. Code, § 923). These provisions have been held to except from the operation of the Cartwright Act combinations of laborers for the purpose of furthering their interests (*Schweizer* v. *Local Joint Executive Board,* 121 Cal.App.2d 45 [262 P.2d 568]), and this exception is recognized where the object of the labor combination is reasonably related to wages, hours, or conditions of employ-

ment (*C. S. Smith Met. Market Co.* v. *Lyons,* 16 Cal.2d 389 [106 P.2d 414]; *Los Angeles Pie Bakers Assn.* v. *Bakery Drivers,* 122 Cal.App.2d 237 [264 P.2d 615]).

There is evidence that the use of mortar setting beds in tile laying requires more time than the use of board backings and mastic adhesives. The federal rule appears to be that it is a legitimate labor objective to oppose the use of time-saving devices which will reduce employment (*United States* v. *Bay Area Painters, supra,* 49 F.Supp. 733; *United States* v. *Carrozzo,* 37 F.Supp 191 [affirmed without opinion in *United States* v. *International Hodcarriers,* 313 U.S. 539 (61 S.Ct. 839, 85 L.Ed. 1508)]). However, the particularly strange anomaly of this case is that respondents plead and offer proof that the union's objection is based upon the theory of preserving work time, while appellants plead and offer proof to the contrary. We can only assume that the trial court decided the issue in favor of respondents, although against their contention. Appellants do argue that their purpose is to improve the quality of tilework afforded to the public, that this is a legitimate labor objective, and that thus this agreement is excepted from the operation of the Cartwright Act. The cases cited for this view do not appear to support it. *Minkoff* v. *Jaunty Junior, Inc.,* 36 N.Y.S.2d 507, upheld a collective bargaining contract which provided for contributions from employers and union to support an advertising campaign to increase public use of garments manufactured in the New York area. *Bay Area Painters etc. Committee* v. *Orack,* 102 Cal. App.2d 81 [226 P.2d 644], upheld an agreement of employers for the purpose of policing their industry to assure that contractors lived up to the terms of their collective bargaining agreements. Neither situation is comparable to that presented here. In any case, the evidence was in conflict as to the relative advantage to the purchaser of the two methods, and this conflict was resolved against appellants.

 Upon appeal from the granting or denial of a preliminary injunction, not only is the trial court's determination of fact issues binding, if supported by substantial evidence (*Palm Springs etc. Co.* v. *Kieberk Corp.,* 37 Cal.App. 2d 642 [100 P.2d 346]), but a broad discretion is vested in the trial court as to the action to be taken upon the facts it finds (*People* v. *Gordon,* 105 Cal.App.2d 711 [234 P.2d 287]; *People* v. *Black's Food Store,* 16 Cal.2d 59 [105 P.2d 361]). Still further, the burden is upon the appellant to make a clear showing of abuse of that discretion (*Remillard Brick Co.* v.

*Dandini,* 47 Cal.App.2d 63 [117 P.2d 432] ; *People* v. *Gordon, supra*). In the light of these principles, reversal is not warranted here. Of course, nothing herein contained is to be construed as expressing any view as to the weight of the evidence, or as to the proper ultimate disposition of the action. ▮ The ultimate rights of the parties are not determined by granting or denial of a preliminary injunction (27 Cal.Jur. 2d 114). Appeal from such granting or denial can settle little in a case where the trial court's exercise of its discretion rests in any substantial part upon the determination of fact issues. In the end, the case is returned to the trial court for the full trial which has not yet been had, with the prospect of still another appeal from that judgment. In view of the priority accorded such actions, the case could be disposed of in the trial court and be well on the way to final disposition long before the appeal relating to the preliminary stages is completed. The value of injunctive relief as a means of settling labor disputes has been doubted (*Park & T. Import Corp.* v. *International etc. of Teamsters,* 27 Cal.2d 599, 608-609 [165 P.2d 891, 162 A.L.R. 1426]).

Appellants also contend that their demand for restriction of use of plasterboard backings is a legitimate labor objective because of a proposed contract provision that defects must be repaired by the workman on his own time. But the only fair construction of this provision is that it applies only where the workmanship is faulty, and not where the material is inadequate. Thus the burden on the employee is unrelated to the backing used.

▮ Appellants also assert that the injunction issued is too broad in its scope. On its face, the injunction would prohibit any strike or picketing by appellant union, even for objectives wholly unrelated to the issue here in dispute. The prohibition should be limited to such strike or picketing as is for the purpose of securing or enforcing the disputed section 2(a) of the proposed agreement (*Park & T. Import Corp.* v. *International etc. of Teamsters, supra*). Also, the injunction bars the union and Peninsula from enforcing the agreement now in effect between them. That agreement is not the subject of attack in this action. Indeed, respondents allege that it is the extension of like provisions to them which will diminish competition, and the inference is inescapable that enforcement of the existing agreement will have the opposite effect. Thus respondents are not parties injured by the

Peninsula agreement, if it be not extended to them. This prohibition should be eliminated.

The preliminary injunction is modified in the respects just outlined. As so modified, the injunction and the order granting it are affirmed. In accordance with stipulation on file, each party shall bear his own costs.

Kaufman, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied December 20, 1957, and appellants' petition for a hearing by the Supreme Court was denied January 15, 1958. Traynor, J., was of the opinion that the petition should be granted.