[Civ. Nos. 12861, 12996. Fourth Dist., Div. One, July 3, 1974.]

ENVIRONMENTAL COALITION OF ORANGE COUNTY, INC.,
Plaintiff and Respondent, v.
AVCO COMMUNITY DEVELOPERS, INC., Defendant and Appellant.

516

[black redaction bars]

## COUNSEL

Stephens, Jones, LaFever & Smith, R. Wicks Stephens II, Fulop, Rolston, Burns & McKittrick and Marvin G. Burns for Defendant and Appellant.

Jensen & Jones and Stanley R. Jones for Plaintiff and Respondent.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Roderick Walston and Donatas Januta, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**COUGHLIN, J.**\*—Defendant, a land developer, appeals from an order imposing a preliminary injunction requested by plaintiff, an environmental organization, restraining defendant from proceeding with a development project on its land, which is located in the coastal zone, because defendant had not obtained a permit to develop such, as allegedly required by the Coastal Zone Conservation Act (Pub. Resources Code, § 27000 et seq.—all subsequent section references, unless otherwise indicated, are to the Public Resources Code). The order granting the preliminary injunction was filed May 22, 1973. Notice of appeal therefrom was filed July 20, 1973. This is the appeal in case No. 4 Civ. 12861. On October 15, 1973 defendant filed a motion "for an order dismissing the preliminary injunction." On October 25, 1973 the court made an order denying the motion "on the ground it does not have jurisdiction." The basis for this ruling was the fact the appeal from the order granting the preliminary injunction was pending. Defendant appeals from the order denying its motion. This is the appeal in case No. 4 Civ. 12996. The two appeals have been consolidated by order of this court.

---

\*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[black redaction bar]

The act provides, on or after February 1, 1973, any person wishing to perform any development within the permit area, which includes defendant's land, shall obtain a permit authorizing such development (§ 27400).

Defendant contends it is not required to obtain a permit under the foregoing provision because the development projects in question had been commenced and were in progress over a period of several years before the act became effective; in the course thereof it had entered into and performed a contract with the Orange County Harbor District, hereinafter referred to as the Beach Agreement, which was ratified by the State of California on October 21, 1971, whereby defendant sold beach land to the County of Orange at less than market value, and improved a part thereof, upon condition defendant would be permitted to develop designated tracts of its land pursuant to a zoning ordinance and approved planned regulations adopted by the County of Orange; and, before February 1, 1973, as part of such development, it had performed substantial construction under requisite governmental approvals and permits, made substantial expenditures and incurred substantial liabilities.

Defendant predicates its contentions in the premises on several legal theories claiming (1) under the decision in *San Diego Coast Regional Com. v. See The Sea, Limited*, 9 Cal.3d 888 [109 Cal.Rptr. 377, 513 P.2d 129], and the facts in this case, completion of its development projects is not subject to the permit requirement provisions of the act; (2) it has acquired "common law" vested rights to complete the projects; (3) the state is estopped to assert compliance with the permit requirements of the act as a prerequisite to completion of the projects because it induced defendant, through the Beach Agreement, to change its position in reliance upon a representation it would be permitted to develop its land pursuant to the Laguna Niguel General Plan Amendment No. 4 and the Planned Community District regulations, which the county agreed to and did adopt, none of which encompassed restrictions of the nature contemplated by the act, and plaintiff, deriving its authority to bring this action from the state, is subject to this estoppel; and (4) the act impairs the contractual obligations of the state to defendant under the Beach Agreement in violation of article I, section 16 of the California Constitution.

The act, by section 27404, specifically excludes certain persons from the permit requirements, and provides, in part, if a county has issued a building permit prior to November 8, 1972 "no person who has obtained

a vested right thereunder shall be required to secure a permit" and "any such person shall be deemed to have vested rights if, prior to November 8, 1972, he has in good faith and in reliance upon the building permit diligently commenced construction, and performed substantial work on the development and incurred substantial liabilities for work and materials necessary therefor."

The land involved in the controversy consists of three tracts, numbered 7479, 7867X and 7885, in the unincorporated area of Orange County known as Laguna Niguel. Pertinent data respecting the development of each tract, as shown by declarations filed by defendant, is as follows:

1. *Tract 7479:* Planning commenced in January 1968; tentative tract map approved January 4, 1972; grading permit issued February 15, 1972; grading commenced February 16, 1972 which included installation of storm drains, box culverts, street improvements, a bridge, landscaping, the widening of Pacific Coast Highway, replacement of utilities and construction of a beach revetment; final tract map approved February 24, 1972; and as of February 1, 1973, the total monies expended and total liabilities incurred in the "development" were, respectively, $2,082,070 and $740,468.

2. *Tract 7867X:* Grading authorized by permit issued in 1969; cost estimates for construction of service station prepared in June 1970; cost and grading studies for improvements of streets and for construction of service station and shopping center areas undertaken in June and July 1971; tentative parcel map approved May 23, 1972; tentative parcel maps reviewed by 11 governmental agencies; County of Orange given information respecting plan of development for tract 7867X, including proposed land use of parcels; final parcel map approved August 30, 1972 following approval by appropriate governmental agencies of proposed sewer lines, connections and structures, on-site components of sewage disposal system, streeet improvements, including surface drainage, public streets, sidewalks, underground utilities and street lights, water distribution system and dedication of property for highway purposes; street grading permit issued following payment of fee therefor on September 20, 1972; on-site grading permit issued January 15, 1973 pursuant to fees paid November 3, 1972 and grading commenced; and as of February 1, 1973 the total monies expended and total liabilities incurred in the "development" were respectively $132,991 and $33,270.

3. *Tract 7885:* Planning for home sites commenced in 1968 with study and report; golf course and artificial lake study and report in early 1970; master off-site improvements on Pacific Coast Highway completed in 1970; designing, planning and coordination of the development of the tract, including land use plan, preparation of preliminary site plans for the entire project by experts, during the period July 25, 1971, to June 30, 1972; land use plan and graphic master plan for tract, showing breakdown of lots into residence, commercial, schools, parks, green belt and open space areas, prepared February 17, 1972; additional land use plans prepared and revised February 25, 1972, April 26, 1972 and August 1, 1972; tentative map prepared and submitted to Orange County Planning Department May 15, 1972; tentative map filed June 13, 1972 and approved September 13, 1972, after submission to and review by 14 governmental agencies; information furnished county in connection with the proposed plan for development of the tract including land uses, number of lots, lot layouts, identification of proposed building sites, location and dimensions of easements and rights of way for lots, underpasses and drainage sewers for flood control purposes, location, dimensions and grades of all highways and streets, type and extent of proposed street improvements, proposed method of sewage disposal, and other factors pertinent to the development of the tract; grading permit for Phase I issued September 28, 1972 following submission of master grading plan to two governmental departments, which was suspended pending filing of environmental impact statement; statement filed and thereafter approved on October 24, 1972; grading permit reinstated December 24, 1972 and grading commenced; grading plan for Phase II submitted to the county on December 12, 1972 and permit issued February 14, 1973; other studies made and plans submitted to numerous governmental agencies for various aspects of the development between October 1972 and February 1973; and, as of February 1, 1973 the total monies expended and the total liabilities incurred in the "development" were respectively $895,298 and $1,729,477.

In 1971 defendants sold a part of tract 7479, now known as Niguel Beach Park, to the County of Orange, allegedly at less than its fair market value, pursuant to an agreement between the Orange County Harbor District, acting on behalf of the county and defendant, i.e., the Beach Agreement, under which the sale was conditioned upon approval by the county of the Laguna Niguel General Plan Amendment No. 4; enactment of an ordinance approving defendant's request for imposition of planned community zoning for the property included in all three tracts; approval of the grading plan; enactment by the state Legislature of a statute ratifying the agreement; and approval thereof by the state Lands Commission.

In October 1971 the state Legislature enacted chapter 1209, Statutes 1971, which was approved by the Governor, became law, approved and ratified the Beach Agreement. In early 1972 the agreement was approved by the state Lands Commission. The County of Orange adopted Laguna Niguel General Plan Amendment No. 4 by ordinance enacted December 8, 1971, and allegedly included the property in the three tracts within the planned community zone by ordinance enacted November 24, 1971, which allegedly activated the planned community regulations prepared at defendant's request under which the property could be developed for a "variety of residential uses together with supporting uses consisting of neighborhood commercial sites, schools, churches, parks, recreational and other community amenities."

The term "development" as used in the act, by statutory definition, includes placing or erecting any solid materials or structure; grading; subdividing; constructing or altering any structures including any facility of any utility, building, road or conduit; removing vegetation; and many other specifically described acts involving different types of development construction, or change, in, above, or under land or water (§ 27103).

The preliminary injunction restrains defendant from engaging in, committing or performing specifically described acts without obtaining a coastal permit under the statute, describing those acts in very broad terms using the pattern provided by the statutory definition of the term "development" and relating them to each of the three tracts. That portion of the injunction relating to tract 7479 provides: "Grading operations performed under permits and amendments thereto obtained from the County of Orange on or before November 8, 1972 shall not be prohibited."

Discussions between court and counsel at the conclusion of the hearing on the motion for the preliminary injunction indicate the court believed work done by defendant after November 8, 1972, the date when the act became effective, was within the coastal permit requirements of the act. These discussions preceded the decision in *See The Sea*.

In response to defendant's contentions, plaintiff asserts: (1) the decision in *See The Sea* is not applicable because it applies only to construction commenced before February 1, 1973 pursuant to a building permit and defendant's construction was pursuant to grading permits; (2) defendant did not perform "substantial lawful construction" in connection with its property as that term is used in *See The Sea*, but performed only work preliminary to construction work, which is not work performed under a

building permit; (3) as found by the trial court defendant acquired vested rights only to finish grading under permits obtained prior to November 8, 1972, and did not acquire vested rights to do work it could do only under a building permit; and (4) for various reasons, stating them, other contentions by defendant are without merit.

Initially we are confronted with the rules respecting the nature, scope and effect of an order granting a preliminary injunction, and of an appeal from such an order. ■ The purpose of a preliminary injunction is to maintain the status quo pending a decision on the merits (*Nyman* v. *The Desert Club*, 109 Cal.App.2d 63, 66 [240 P.2d 37]). ■ ■ Where a decision on the merits requires a determination of issues of fact, granting a preliminary injunction is a matter within the sound discretion of the trial court (*Brock* v. *Superior Court,* 11 Cal.2d 682, 688 [81 P.2d 931]); an order granting such does not determine the ultimate rights of the parties (*Bomberger* v. *McKelvey,* 35 Cal.2d 607, 612 [220 P.2d 729]; *Hartwick* v. *Superior Court,* 174 Cal.App.2d 809, 811 [345 P.2d 304]; *O'Shea* v. *Tile Layers Union,* 155 Cal.App.2d 373, 378 [318 P.2d 102]; *Anderson* v. *Joseph,* 146 Cal.App.2d 450, 454 [303 P.2d 1053]; *Trickey* v. *City of Long Beach,* 101 Cal.App.2d 871, 878 [226 P.2d 694]), but determines only, in balancing their convenience, the defendant should be restrained from exercising claimed rights pendente lite (*Miller & Lux* v. *Madera Canal etc. Co.,* 155 Cal. 59, 62-63 [99 P. 502]; *Trickey* v. *City of Long Beach, supra,* 101 Cal.App.2d 871, 878); the scope of appellate inquiry is limited to a determination whether the court abused its discretion (*Froomer* v. *Drollinger,* 183 Cal.App.2d 787, 788 [7 Cal.Rptr. 268]); and the appellate court will not determine the merits of the case in advance of trial (*O'Shea* v. *Tile Layers Union, supra,* 155 Cal.App.2d 373, 378; *Anderson* v. *Joseph, supra,* 146 Cal.App.2d 450, 454), or interfere with the order absent a showing of abuse of discretion (*Union Interchange, Inc.* v. *Savage,* 52 Cal.2d 601, 606 [342 P.2d 249]; *People* v. *Black's Food Store,* 16 Cal.2d 59, 61 [105 P.2d 361]; *Froomer* v. *Drollinger, supra,* 183 Cal.App.2d 787, 788). Where an issue of fact is not present an appellate court may determine whether granting the preliminary injunction was error as a matter of law (*Isert* v. *Riecks,* 195 Cal. 569, 576 [234 P. 371]).

■ We have concluded under the record before us, as a matter of law, the "development" of defendant's property under the grading permits issued before February 1, 1973 is not subject to the act. We use the term "development" as including all activity for which grading permits were re-

quired and which was authorized by the grading permits issued. To the extent the preliminary injunction enjoins this "development" granting such was an abuse of discretion.

The decision in *San Diego Coast Regional Com.* v. *See The Sea, Limited, supra,* 9 Cal.3d 888, basically is premised on the conclusion the act did not intend to invoke a moratorium on construction commenced before but completed after February 1, 1973, and, for this reason, a permit to complete such is not required.

This basic premise is expressed as follows:

1) "We have concluded the act requires a coastal permit for construction commenced after 1 February 1973, *but does not require one* for builders performing substantial *lawful construction* of their *projects* prior thereto." (*Ibid.* p. 890. Italics added.)

2) "Nowhere does the act expressly provide for a moratorium on *construction* commenced prior to 1 February 1973. Reference having been omitted to a moratorium and to *work* commenced but uncompleted on 1 February, the plain implication of the prospective language used is that the coastal permit requirement would be inapplicable to such *projects*." (*Ibid.* p. 891. Italics added.)

3) "Had the act been intended to require a permit for completion of *construction* commenced before 1 February, the requirement would as a practical matter have resulted in a moratorium *on all construction* in the permit area. . . . interference with *construction in progress,* tantamount to a moratorium, would result in serious economic dislocations . . . in the absence of language in the act imposing a moratorium, it is reasonable to conclude the voters intended none." (*Ibid.* p. 892. Italics added.)

4) "Finally, it would be unjust now to *imply a permit requirement* for builders who, like defendant, relied on the absence of an express requirement. Even though a particular *construction project* might actually conform to the act's objectives, construction would have to be interrupted while a permit is sought." (*Ibid.* p. 893. Italics added.)

However, the court confines its holding a "coastal permit" is not required for work commenced prior to February 1, 1973, to "builders performing substantial *lawful construction* of their projects" before that date; and notes the defendant in the case, before February 1, 1973, "engaged in substantial *lawful work* and incurred substantial liability." (*Ibid.* pp. 890, 893. Italics added.) The defendant had obtained a building permit on De-

cember 6, 1972, i.e., after the effective date of the act, but before February 1, 1973; and had commenced and performed substantial work under the permit before the latter date. Relying on this fact, plaintiff in the case at bench contends the decision in *See The Sea* applies only to persons who have performed work under a building as distinguished from a grading permit, and is not applicable to the case at bench. However, the rationale of the decision dictates the conclusion it is not limited in application to identical factual situations. Although the defendant in *See The Sea* did its work under a building permit the majority decision is not necessarily predicated upon the existence of a "building permit" as distinguished from a "grading permit," or some other governmental authorization. At most the decision requires a person claiming exclusion from the act should have *lawfully* commenced construction prior to February 1, 1973. In determining whether it applies to a particular development as that term is defined by section 27103, no sound reason exists for differentiating between "development" pursuant to a building permit and "development" pursuant to a grading permit.[1] Construction authorized by either is lawful.

The "development" authorized by the grading permits issued to defendant before February 1, 1973, is excluded from the permit requirements of the act under the rule in *See The Sea*.

■ On the other hand we have concluded whether defendant's "development" of its property without a coastal permit extends to completion of its projects in toto, i.e., for the uses authorized by the planned community regulations allegedly adopted by the County of Orange, is a question which should be determined by a trial on the merits, and to the extent the preliminary injunction enjoins this latter "development" granting such was not an abuse of discretion.

The record establishes, contrary to defendant's contention, the scope of defendant's claimed right to develop its property without a coastal permit presents issues of fact as well as law. The trial court was not required to accept biased statements in defendant's declarations even though they were not contradicted. Furthermore, inferences upon which defendant must

---

[1]The trial judge, at the hearing on the motion for a preliminary injunction expressed the opinion the exclusion provided by section 27404 would apply to a person who had obtained a grading permit although that section on its face applies only to a person obtaining a building permit. However, at the time of the hearing the decision in *See The Sea* had not been rendered and the judge limited the applicability of section 27404 to permits issued before the effective date of the act, i.e., November 8, 1972, as provided by that section, apparently relying thereon as the sole basis for the exclusion.

rely in support of its contentions are premised on facts which equally support contradictory inferences. The trial court eventually must determine which of these inferences is acceptable. In addition, the complaint and answer present many issues of fact. In the main, defendant's contentions on this appeal are premised on controversial facts such as those respecting the scope of the "development" not completed to date or authorized under the grading permits, which defendant claims is not subject to the permit provisions of the act; those defining the scope of the "construction" or "project," within the meaning of the decision in *See The Sea,* of which the work heretofore performed was a part; those on the issue whether, as contended by plaintiff, the work performed by defendant has been merely preliminary to "construction" and not a part of the "construction" it seeks to complete without a coastal permit, which is an issue of law and fact; those respecting the scope and existence of defendant's claimed "common law" vested right to complete its development, parts of which allegedly have been presented to and approved by governmental agencies as incident to subdivision and grading activities; those respecting the extent of the approval given and its integrated relationship to and effect upon defendant's claimed extent of its total development; those on the issue of whether, as contended by defendant, in light of the approval given its subdivision and parcel maps further governmental authorization to proceed with and complete its development, in whole or in part, involves ministerial action only, rather than discretionary action (see *People* v. *County of Kern* (1974) 39 Cal. App.3d 830 [115 Cal.Rptr. 67], and the definitive scope of the incompleted development, or parts thereof, respectively subject either to further ministerial or discretionary authorization; those on the issue of the relationship between defendant's claimed vested right to develop its property and the requirement of a permit to proceed with that development which, in light of the circumstances, even though regulating the exercise of the right may not impair it, those respecting the effect of the Beach Agreement, its interpretation, the intent of the parties thereto, the extent of defendant's reliance thereon and other related issues; and those on the issue of the claimed inequality in application of the act. The foregoing recital of some of the issues requiring a trial on the merits is not meant to be exclusive.

We make no determination respecting defendant's contention governmental approval of its subdivision and parcel maps, including itemized "developments" in connection therewith, under the decision in *See The Sea* or the common law doctrine of vested rights, authorizes construction of its "projects" in toto without a coastal permit. The "development" included in a building or grading permit is adequately defined by the terms of the

permit, its nature and the law requiring such, justifying the conclusion work performed pursuant thereto is not subject to subsequent permit requirements. However, the "development" included in the approval of subdivision or parcel maps may not be sufficiently definitive to justify the conclusion work performed pursuant thereto was part of a "construction" or "project" encompassing more than the preparation of land for subdivision purposes in conformity with the approved maps. In the event it is contended the terms of the approval, the nature thereof and the law requiring such do not adequately define the "development" authorized thereby, proof of the "development" permissible thereunder would raise an additional issue of fact.

The order granting the preliminary injunction should be modified and affirmed in accord with the views expressed herein.

On appeal from the order denying defendant's motion to dismiss the preliminary injunction, plaintiff contends the court properly refused to consider the motion because, in light of the pending appeal from the order granting the preliminary injunction, it did not have jurisdiction in the premises, citing in support of its position Code of Civil Procedure, section 916, subdivision (a) and the decisions in *Eisenberg* v. *Superior Court,* 193 Cal. 575, 579-581 [226 P. 617] and *Takahashi* v. *Fish and Game Com.,* 30 Cal.2d 719, 725 [185 P.2d 805] (overruled on other grounds). In response defendant contends the court did have jurisdiction, relying upon the decisions in *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* 66 Cal.2d 782, 787-789 [59 Cal.Rptr. 141, 427 P.2d 805]; *Union Interchange, Inc.* v. *Savage, supra,* 52 Cal.2d 601, 603; *Sontag Chain Stores Co.* v. *Superior Court,* 18 Cal.2d 92, 93 [113 P.2d 689] and *Branker* v. *Superior Court,* 165 Cal.App.2d 816 [332 P.2d 711]. Reliance on these decisions is misplaced. None of them concern a motion to dismiss or modify an order granting a temporary injunction from which an appeal had been taken and was pending. The code section and decisions cited by plaintiff are controlling. The order denying the motion should be affirmed on the ground stated therein. Furthermore, the only issue on appeal from the second order was whether the trial court did or did not have jurisdiction to hear the motion;[2] a reversal would merely return the matter to the trial court for consideration of the motion; if defendant has good cause

---

[2]Defendant by the second appeal, in effect, wished to raise issues going to the merits of the first appeal which were not germane to a review of the order denying its motion to dismiss because of lack of jurisdiction.

to move to vacate or modify the order granting the preliminary injunction it may present such when the appeals herein become final.

It should be noted, although the grading permit for Phase II of the completed plan for tract 7885 was issued after February 1, 1973, i.e., February 14, 1973, the application therefor had been made on December 12, 1972. In the event defendant is entitled to a permit for the grading in question dated prior to February 1, 1973, under the decision in *California Central Coast etc. Conservation Com.* v. *McKeon Constr.,* 38 Cal.App.3d 154, 159 [112 Cal.Rptr. 903], it would have to join the Coastal Commission as a party to the action. The effect, if any, of the delay in issuing the permit on defendant's right to proceed without a coastal permit is not an issue in the proceedings under review.

The order granting the preliminary injunction is modified by excluding therefrom the development of defendant's property pursuant to and within the authorization conferred by the grading permits issued prior to February 1, 1973; and, as modified, is affirmed. The order denying the motion to dismiss is affirmed. Each party shall bear its own costs on appeal.

Ault, Acting P. J., and Cologne, J., concurred.