**The SEA RANCH ASSOCIATION,**
etc., et al., Plaintiffs,

v.

**The CALIFORNIA COASTAL ZONE CONSERVATION COMMISSION,**
et al., Defendants.

**No. C–74–1320 SW.**

United States District Court,
N. D. California.

Jan. 13, 1975.

Malcolm A. Misuraca, Arata, Misuraca & Clement, Santa Rosa, Cal., for plaintiffs general.

L. M. Belden, Anderson, McDonald, Belden & Kelly, Santa Rosa, Cal.; for plaintiff Melvin Burke.

John Roger Beers, Natural Resources Defense Council, Inc., California Coastal Alliance, Inc., Palo Alto, Cal., for Sierra Club, Nat. Res. Def. Council & Calif. Coast. Alliance.

Donatas Januta, San Francisco, Cal., for State of California.

Michael R. Sherwood, San Francisco, Cal., for Sierra Club.

## OPINION

Before DUNIWAY, Circuit Judge, and EAST and WILLIAMS District Judges.

DAVID W. WILLIAMS, District Judge:

### STATEMENT OF FACTS

In November 1972, the Citizens of California passed the Coastal Zone Conservation Act by means of the initiative process. The Act is designed to preserve

the "remaining natural and scenic resources of the coastal zone." California Public Resources Code, Sec. 27001.[1] The Act established a state commission and six regional commissions charged with the preparation of a land use plan for the California coastal zone and the control of further development in the coastal region pending completion of the plan. The Act states that this plan is to be completed by December 1975 and submitted to the state legislature for approval in 1976. The entire Act terminates 91 days after the adjournment of the 1976 California state legislature. Sec. 27650.

The provisions of the Act which are designed to control development during this interim period require that any person "wishing to perform any development" in the coastal region during this term must first obtain a permit from the appropriate regional commission. Sec. 27400.

It is this permit procedure which forms the controversy of this case.

Plaintiffs are eleven individual property owners at the Sea Ranch coastal development in Sonoma County and the Sea Ranch Association, a non-profit corporation representing all property owners at Sea Ranch. The Sea Ranch development is a vacation-home subdivision of single family residences. The Sea Ranch Association provides various services to member owners and holds title to a substantial amount of common-property area. At the time of the passage of the Coastal Zone Act, the Sea Ranch development was still under construction, some residences substantially completed, some under construction, and many not yet begun.

Pursuant to the Act, the state commission on June 19, 1974 granted the property owner plaintiffs permits to develop their property subject to certain conditions. The state commission's decision was made upon an appeal from a similar decision by the North Central Regional Commission.

The principal conditions required plaintiffs to:

1. Thin and trim trees planted by the developer which interfered with ocean views;

2. Develop a system of public access along the Sea Ranch development coastline;

3. Institute a program to monitor the cumulative effects of Sea Ranch development septic tanks; and

4. Initiate and carry out a program to monitor the effects of Sea Ranch development water diversions on the water flow and fish life in the Gualala River.

The state commission stated that in the event that the Sea Ranch Association would not agree to implement these conditions, an individual applicant could begin construction by depositing $1500 into an account to be established by the regional commission. The funds would be used by the regional commission to "mitigate the environmental problems" which were the subject of the conditions.

Plaintiffs dissatisfied with the state commission's decision filed this suit on June 21, 1974 challenging specific provisions of the Coastal Act as unconstitutional and also attacking the decisions of the commissions as in excess of their constitutional authority.[2] Plain-

---

1. All subsequent Section references are to the California Public Resources Code.

2. Plaintiffs assert that the following provisions of the Act violate due process:
   a. The requirement of a two-thirds affirmative vote by the commissions for developments which "interfere with the line of sight, adversely affect water quality or open water free of visible structures" [Sec. 27401].

   b. The imposition on applicants of the burden of proof as to all issues [Sec. 27402].
   c. The requirement of dedication of access to publicly-owned or used beaches [Sec. 27403(a)].
   d. The authority to place conditions on permits for "adequate and properly located public recreation areas" [Sec. 27403(b)] and "solid and liquid waste treatment, disposition, and management" [Sec. 27403(c)].

tiffs bring their suit under 42 U.S.C. § 1983, the federal civil rights act and name as defendants the state and regional commissions, their individual members, the Natural Resources Defense Council (NRDC), the California Coastal Alliance (CCA), and the Sierra Club.

Defendants NRDC and CCA have also taken issue with the decisions rendered by the commissions and on July 8, 1974, filed a petition for writ of mandate in state Superior Court seeking judicial review of the commission's decision.

The parties have five separate motions before the Court: Plaintiffs have moved to enjoin NRDC and CCA's state court action, to enjoin the commission's requirement of a $1500 deposit in lieu of certain permit conditions, and to reconsider a previously invoked stay of discovery. Defendant, coastal commission, moves to dismiss or abstain; and Defendant NRDC moves to dismiss or abstain.

■ After extensive oral argument and briefing it became evident that the crux of the constitutional challenge which caused this Court to be convened in the first place [3] is whether constitutional concepts of vested rights and due process preclude the application of the California Coastal Zone Act to plaintiffs at all.[4] Plaintiffs argue that it should not be applied to them and that to do so would violate their civil rights and deny them due process. Their position is, essentially, that this narrow definition of vested rights ignores a whole raft of common law property rights that may have vested prior to the adoption of the Act. In particular they argue that where, as here, a developer of a planned-unit community and an association of landowners and individual landowners have worked closely with state and local governments in the intricate planning of such a community, have dedicated substantial properties for public use pursuant thereto and have secured approval thereof, the individual landowners have earned vested rights in both the overall development of the community and in the development of their specific lots. Thus, they contend any statute which purports to deny or disregard such vesting violates due process.

■ They also claim that since this statute is unconstitutional on its face abstention would be inappropriate be-

---

e. The definition of "vested rights" to the extent it is more restrictive than the due process clause of the 14th Amendment permits [Sec. 27404].

Plaintiffs' attack on the action of the commission is primarily focused on the imposition of the specified conditions, and is couched in terms of due process and equal protection.

3. Judge Duniway harbors doubt that this matter is properly before a three-judge court in accordance with 28 U.S.C. § 2281. There is some concern that although the Coastal Zone Act is a state statute, it directly applies to only one percent of the total area of California (that strip of coastal land which extends 1000 yards inland from the mean high tide line). Under the rationale of *Rorick v. Comm'nrs*, 307 U.S. 208, 212, 59 S.Ct. 808, 810, 83 L.Ed. 1242 (1939) (which involved the Florida Everglades of about 4,000,000 acres), where it was held that ". . . it is now settled doctrine that only a suit involving 'a statute of general application' and not one affecting a 'particular municipality or district' can invoke Section 266 [§ 2281]", it is believed that the statutes herein may not be of general application. The majority of the panel, however, is of the opinion that this is properly a § 2281 case.

4. § 27404 which defines vested rights provides:

"If prior to * * * November 8, 1972, any city or county has issued a building permit, no person who has obtained a vested right thereunder shall be required to secure a permit from the regional commission; providing that no substantial changes may be made in any such development, except in accordance with the provisions of this division. Any such person shall be deemed to have such vested rights if, prior to * * * November 8, 1972, he has in good faith and in reliance upon the building permit diligently commenced construction and performed substantial work on the development and incurred substantial liabilities for work and materials necessary therefor. Expenses incurred in obtaining the enactment of an ordinance in relation to the particular development or the issuance of a permit shall not be deemed liabilities for work or material."

cause there is no room for state interpretation which would save it.[5]

While a federal court cannot channel federal constitutional issues to state courts merely to avoid a federal decision, *Zwickler* v. *Koota*, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), the appropriate case for abstention arises when the challenged state statute is susceptible to a construction by the state courts that would avoid or modify the federal constitutional question. *Harrison* v. *NAACP*, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959) ; *Lake Carriers' Association* v. *MacMullan*, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).

The abstention doctrine rests upon policy considerations of comity and judicial economy. First, abstention is appropriate for the avoidance of unnecessary interference with state regulatory schemes on the premise that federal intervention in such schemes would lead to conflicts in the federal-state relationship. *Burford* v. *Sun Oil*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Second, abstention is appropriate to avoid a federal court making tentative or premature decisions on issues of state law when a state court decision may substantially eliminate or minimize the federal constitutional issue. *Railroad Comm'n* v. *Pullman,* 312 U.S. 496, 61 S. Ct. 643, 85 L.Ed. 971 (1941).[6] Both of these considerations are present in the case before us.

In *Burford, supra,* a federal court was called upon to consider a Texas administrative decision made pursuant to a complex state scheme for conserving its oil deposit resources. The protective scheme in *Burford* was no doubt more complex than the California coastal protection plan. Nevertheless, the questions of California coastal protection present local matters of vital state concern, just as preservation of oil resources presented local matters of vital state concern to the state of Texas in *Burford.* For this Court to presume an essential role in this state scheme of resource preservation would be an audacious and presumptuous violation of *Burford* principles.

The Supreme Court's most recent comprehensive statement on the abstention doctrine *Lake Carriers', supra,* applies it to a constitutional challenge of state laws that had not been definitively construed by state courts. Indeed, that case bears a striking resemblance to the controversy here. The *Lake Carriers'*

---

5. Plaintiffs argue that abstention is inappropriate in this case because they have brought this action under the Civil Rights Act, 42 U.S.C. § 1983. The Court does not agree. It is true that *McNeese* v. *Board of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), and the strong dissent in *Harrison* v. *NAACP, supra,* have caused some concern about the propriety of abstaining in civil rights suits. But to say, as plaintiffs argue, that *Lynch* v. *Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), has expanded this concern, spawned by cases involving free speech infringement or racial discrimination, automatically to include any action brought under § 1983 is an extension this Court is not persuaded to make. Prior to *Lynch* the Supreme Court revealed that it was not always hesitant to recommend abstention in civil rights actions. See *Reetz* v. *Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) ; *Askew* v. *Hargrave,* 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). And subsequent to *Lynch,* lower courts have continued, under the traditional *Pullman* analysis, to find abstention warranted in appropriate cases, even though they were brought under § 1983. E. g., *South Cutler Bay, Inc.* v. *Metropolitan Dade County,* 349 F.Supp., 1205, 1208 (S.D.Fla.1972) ; *Hill* v. *Brinegar,* 371 F.Supp. 1166 (D.Del.1974). In short, there is no per se exception to the abstention doctrine for civil rights cases. See also Field, *Abstention in Constitutional Cases*: The Scope of the Pullman Abstention Doctrine, 122 U.Pa.L.Rev. 1071, 1131–34 (1974).

6. "In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication. . . . The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court. The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication." 312 U.S. at 500, 61 S.Ct. at 645.

plaintiffs challenged the Michigan Watercraft Pollution Act on a variety of constitutional grounds. The Michigan law restricted the discharge of sewage into state waters and required toilets on small boats to be equipped with certain pollution control devices. Individual boat owners and an association of lake carriers mounted a Federal challenge to the statute, as interpreted by state authorities, on preemption, commerce clause, equal protection, due process, and vagueness theories.

The Supreme Court found the case a proper one for federal abstention, explaining:

> The paradigm case for abstention arises when the challenged state statute is susceptible of "a construction by the state courts that would avoid or modify the (federal) constitutional question. *Harrison* v. *NAACP*, 360 U.S. 167 [79 S.Ct. 1025, 3 L.Ed.2d 1152]. . . . More fully, we have explained:
>
> "Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions of state law, and premature constitutional adjudication . . . *Harman* v. *Forssenius*, 380 U.S. 528, 534 [85 S.Ct. 1177, 1182, 14 L.Ed. 2d 50] (1965).

406 U.S. 510–11, 92 S.Ct.

The Court then identified two ambiguities in the state statute and concluded:

> "We do not know, of course, how far Michigan courts will go in interpreting the requirements of the state Watercraft Pollution Control Act in light of . . . (a federal water control

act) and the constraints of the United States Constitution. But we are satisfied that authoritative resolution of the ambiguities in the Michigan law is sufficiently likely to avoid or significantly modify the federal questions appellants raise to warrant abstention, . . . ."

406 U.S. at 512, 92 S.Ct. at 1758.

What was said of the Michigan Watercraft Pollution Act in *Lake Carriers'* can also be said as to the whole Coastal Zone Act and specifically the Vested Rights provision: neither have been the subject of definitive interpretation by the state courts. This is not to say that the California courts have not had the opportunity to review various problems arising under these statutes. They have, but they have not had the opportunity to deal with the specific issues raised in this litigation. What little interpretation has occurred leads this Court to believe that these statutory provisions are indeed subject to a variety of interpretations which may well avoid the federal questions raised here. In particular it is not clear whether the Vested Rights Section, 27404, is the exclusive definition of vested rights or even the exclusive device for establishing eligibility for an exemption from the permit requirements of § 27400.[7] Conceivably this statute is subject to at least two interpretations: one that the section is the exclusive definition of vested rights for the Act and thus requires a building permit and substantial construction by a certain date, or two, that it is non-exclusive and may thus be judicially extended to include projects where there has been extensive planning and substantial investment of money in reliance on pre-Coastal Zone Act governmental assurances, even though building permits were not obtained and substantial construction not begun.

---

7. "§ 27400. *Necessity of permit*
   On or after February 1, 1973, any person wishing to perform any development within the permit area shall obtain a permit authorizing such development from the regional commission and, if required by law, from any city, county, state, regional or local agency.

Except as provided in Sections 27401 and 27422, no permit shall be issued without the affirmative vote of a majority of the total authorized membership of the regional commission, or of the commission on appeal."

The few California cases involving the Coastal Zone Act, indicate that there is some confusion about who is exempt and who must obtain permits and the California courts have already chartered a course of judicial interpretation which indicates that an unyielding interpretation of the language of these statutes is not appropriate.

In *San Diego Coast Regional Comm'n v. See the Sea, Ltd.*, 9 Cal.3d 888, 109 Cal.Rptr. 377, 513 P.2d 129 (1973), Justice Clark found that a developer who did not obtain a building permit until after November 8, 1972, the effective date of the Act but before February 1, 1973 its operative date, and who had prior to the operative date demolished a building and spent $79,000.00 on construction *was not required to get a permit* in accordance with § 27400 in order to continue construction. Although Justice Clark does not directly deal with the issue of vested rights in § 27404 he does state that "[w]hile providing for exemption, the section [27404] does not expressly impose a permit requirement on anyone." 109 Cal.Rptr. at 379, 513 P.2d at 131. This would seem to imply that compliance with § 27404 provides one way to avoid the necessity of a § 27400 permit under the Act, but since it does not require all others to get a permit there may be additional ways to avoid the § 27400 permit. In fact, Justice Clark found that a building permit issued before February 1, 1973 and substantial construction before that date negated the necessity of a § 27400 permit. How far this can or will be taken is still unclear.

In *Central Coast Regional Comm'n. v. McKeon Constr. Co.*, 38 Cal.App.3d 154, 112 Cal.Rptr. 903 (1974), the court adopted the *See the Sea* expanded date theory and issued an injunction preventing construction without a commission § 27400 permit, since defendants were neither exempt under the *See the Sea*

test nor § 27404. It should be noted here, however, that defendant McKeon did not purport to have a vested right other than those delineated in the statute, but rather tried to argue "equitable" compliance with the exemption provision. The court was evidently unconvinced.

Further in *Environmental Coal. of Orange Cty., Inc., v. Avco C. D. Inc.*, 40 Cal.App.3d 513, 115 Cal.Rptr. 59 (1974), (a case involving a planned-unit development), the Fourth District found that substantial grading pursuant to a grading permit prior to February 1, 1973 entitled defendants to complete that phase without a § 27400 permit even though *See the Sea* and § 27404 spoke only of building permits and substantial construction.[8] The court went on however, to approve a preliminary injunction against development beyond the grading stage on the theory that any determination of whether the project *in toto* was exempt from the permit requirement should be determined at trial on the merits. *Id.* at 65. This left open the question of whether other substantial commitments made under governmental authorization may be recognized as exemptions under the Act.

Thus in these three cases, the November 8, 1972 date in § 27404 was judicially changed to February 1, 1973, the building permit requirement was judicially expanded to include a grading permit and the question left open as to whether non-construction (e. g., grading) work might exempt a developer from strict compliance with the permit requirement. It has also been represented to the Court that the State of California takes the position that the "building permit" requirement of § 27404 would be fulfilled where there has been "final discretionary governmental approval" but no permit. Although that position has evidently not as of yet been applied by the courts, it is but yet anoth-

8. Specifically, the court said "Although the defendant in *See the Sea* did its work under a building permit the majority decision is not necessarily predicated upon the existence of a 'building permit' as distinguished from a 'grading permit', *or some other governmental authorization*," (emphasis added) *Environmental Coal. of Orange Cty., Inc., supra* at 64.

er indicator that § 27404 is not necessarily limited to its literal terms.

Under these circumstances it is impossible for this Court to accept the premise that this statute is void on its face. Its literal terms have already been construed so as to broaden its application. Its meaning in conjunction with § 27400 and the analysis in *See the Sea, supra,* is less than crystal clear. This is exactly the type of case referred to in *Lake Carriers' Ass'n* v. *MacMullan, supra,* 406 U.S., at 510–511, 92 S.Ct. at 1757, where the challenged state statute is susceptible of " 'construction by the state courts that would avoid or modify the (federal) constitutional question.' "

The only troublesome aspect of abstaining is the possibility that plaintiffs may face unreasonable delay in receiving a state interpretation of the vested rights statute. Time is important in this case because the whole interim permit scheme under this Act will expire in 1976. Any determination of rights to develop the coastal areas subject to the Act prior to the adoption of the final land use plan must necessarily be made prior to 1976. Thus it is of some concern that abstaining and sending plaintiffs back to state court will compromise their constitutional questions. This concern is mitigated however by the fact that there is current litigation in the state court in which plaintiffs are parties and other litigation in which they are not parties where the vested rights statute can be interpreted.

As noted before the environmental group defendants herein have requested a writ of mandate in the Superior Court seeking review of the permits granted these plaintiffs. While these defendants are seeking a determination that the permits should not have been granted, the plaintiffs are evidently countering that not only were the permits properly granted, but that they should have been granted without conditions or plaintiffs should even be exempt from the permit requirement under the vested rights concept.[9]

It has also come to the Court's attention, that the developer of Sea Ranch, Oceanic California, Inc., who previously requested and was denied an exemption under § 27404 has filed its own writ of mandate action on that denial. Although plaintiffs herein are not parties in that action, an interpretation of the vested rights statute favoring Oceanic may moot plaintiffs' complaint.

Finally, an independent mandate procedure in state court is available to plaintiffs. It has been represented that even an expedited procedure is possible. Plaintiffs argue, however, that since they concluded that they were automatically precluded by the terms of § 27404 they never specifically sought an exemption before the commissions, and fear that no state court will hear their writ without sending them back to the commission. This fear may be justified since such appears to be one of the holdings of *State* v. *Superior Court of Orange Cty. (Veta Co.),* 12 Cal.3d 237, 115 Cal.Rptr. 497, 524 P.2d 1281 (1974). There is no reason, however, to believe that the proceedings before the commission would be unduly protracted. If the commission insists on interpreting § 27404 strictly, there would be little need of a factual finding since these plaintiffs had neither obtained a building permit by November 8, 1972 or February 1, 1973, nor had they "diligently commenced construction . . . ." And if the commission agrees that § 27404 allows a flexible vested rights determination, the fact-finding process should still be brief presumably limited to the degree of Sea Ranch's investment and the nature of any prior governmental approval. Finally if the commissions' determinations favor exemption based upon a vesting of plaintiffs' rights, further litiga-

9. Plaintiffs have filed a reservation of rights in this California action reserving all the constitutional questions for a determination by the federal court. This procedure was suggested in *England* v. *Louisiana State Board of Medical Examiners,* 375 U.S. 411, 421, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

tion in this Court may become unnecessary. Thus, even though the possibility of delay is an important factor in this decision, the Court is of the opinion that it is outweighed by the inappropriateness of interjecting itself into the evolution of this complicated and important state statutory scheme, especially since there is every reason to believe these statutes can be interpreted so as to modify or avoid the constitutional questions.

It is hereby ordered that:

1. Defendants' motions to abstain are granted,

2. Defendants' California Coastal Commission and Natural Resources Defense Council motions to dismiss the claim to restrain enforcement of § 27404 is granted,

3. All parties pursue with reasonable diligence in state court a determination of the state issues,

4. Jurisdiction over the remainder of this case is retained, pending state court resolution of state issues, so that the parties may apply to this Court for such relief as may be required during the pendency of the state actions.