**INDEPENDENT VOTERS OF ILLINOIS, a voluntary statewide association of Illinois voters, et al., Plaintiffs-Appellants,**

v.

**Stanley T. KUSPER, Jr., Individually and as Chairman of the Board of Election Commissioners of the City of Chicago, et al., Defendants-Appellees.**

**No. 73–1138.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1973.

Decided Jan. 10, 1974.

---

Thomas R. Meites, Philip J. Bakes, Jr., Michael L. Shakman, Chicago, Ill., for plaintiffs-appellants.

Aldus S. Mitchell, Sophia H. Hall, Paul P. Biebel, Jr., Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and CHRISTENSEN,* Senior District Judge.

---

HASTINGS, Senior Circuit Judge.

This action arose in connection with the March 21, 1972, Democratic Party primary election for the office of Cook County, Illinois, State's Attorney. One of the plaintiffs, Donald Page Moore, was an "independent" candidate in that election. The other plaintiffs are the Independent Voters of Illinois (IVI), a voluntary association of Illinois voters; Michael Shakman, Chairman of IVI and a previous independent candidate for elective office in Cook County who "intends to be an independent candidate for elective public office in the future"; Alan Wiseman, who filed a statutory objection to the nominating petition of the "regular" Democratic candidate for State's Attorney, Raymond Berg; and three individuals who supported and voted for Moore in that election. In addition, the complaint states that all individual plaintiffs are registered Democratic Party voters, and that all intend to vote in future primary and general elections in Cook County. The suit is brought against the Board of Election Commissioners of the City of Chicago ("the Commissioners"); its former Chairman, Stanley T. Kusper, Jr.; and Edward J. Barrett, former Cook County Clerk.[1] Under Illinois law, defendants are custodians of the voter registration records of all Cook County voters.[2]

Plaintiffs filed this action on December 28, 1971. In its original form the complaint sought to require defendants to make available for inspection and copying all records and documents in defendants' possession and control. In particular, plaintiffs sought to compel discovery of the original nominating petition filed with defendant Barrett in support of the candidacy of the before mentioned Berg, as well as all voter records which might be used as evidence by

* Senior United States District Judge A. Sherman Christensen of the District of Utah is sitting by designation.

1. Kusper and Barrett were Chairman and Clerk, respectively, at the time the events herein described transpired. Neither now occupies his former position: Kusper re- placed Barrett as Clerk, and was succeeded as Chairman by John H. Hanly.

2. The County Clerk has custody of only such records as pertain to voters not residing in the City of Chicago. This represented only about five per cent of the total signatures contained in the Berg petition.

plaintiff Wiseman in support of his objection to said petition. The three-member board charged by Illinois law with hearing and ruling on objections to the petition, the Cook County Officers Electoral Board ("the Electoral Board"), was also named a defendant in the original action,[3] as were the Democratic Organization of Cook County; the Democratic County Central Committee; Richard Daley, mayor of Chicago; the City of Chicago; and the County of Cook. None of the last-named defendants, including the Electoral Board, are parties to the amended complaint which is the subject of the present appeal. Both the original and amended complaints allege the violation of First, Fifth and Fourteenth Amendment rights, and jurisdiction is invoked under 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. §§ 1983 and 1985.

Even though the amended complaint seeks relief only *in futuro*, a review of the facts which gave rise to the original action is necessary in evaluating this appeal.

Under applicable Illinois law, petitions of candidates for nomination for county office must be signed by at least one-half of one percent of the qualified electors of the candidate's party. Ill.Rev. Stat.1971, ch. 46, § 7–10(c). For the 1972 Cook County Democratic primary this amounted to approximately 5,500 signatures. There is no upper limit on the number of signatures which may be submitted. Once the petition is filed, it is presumed valid unless objected to by means of an "objector's petition" filed by a qualified voter within five business days after the last day for filing nominating petitions. Ch. 46, § 10–8. An administrative tribunal known as the "County Officers Electoral Board" hears and passes upon such objections. The Board is required to initiate hearings between three and five days after receipt of the objector's petition. Ch. 46, § 10–10. Among the Board's powers is

the authority to issue subpoenas duces tecum for production of documentary evidence relevant to the Board's inquiry. *Id.*

The nominating petition of Raymond Berg for the office of Cook County State's Attorney was filed with defendant Barrett at 3:00 p. m. on December 20, 1971, which was the final day for filing such petitions. The Berg petition contained approximately 20,000 signatures which, according to plaintiffs' brief, "were reportedly gathered in less than four hours with the assistance of county and city employees signing and circulating the petitions when they were supposed to be at their jobs." Allegations of forgeries and other defects in connection with the Berg petition subsequently appeared in the press.

In anticipation of the filing of an objector's petition, certain of the plaintiffs on December 20 requested permission from defendants to inspect the Berg petition. This request was refused. Defendants also refused subsequent requests for access to voter registration cards which plaintiffs wished to inspect in order to expose forgeries in the petition. On the afternoon of December 22, defendants for the first time provided plaintiffs with copies of the Berg petition. They freely admit that at no time did they voluntarily permit access to the registration records.

In justifying their refusal to comply with plaintiffs' request, defendants relied both then and now on the following provision of the Illinois Election Code:

"* * * [N]o information contained in the register of voters, except the name and address of the voter and the name of the political party in whose primary the voter voted, shall be given by the officer in charge thereof or copied by any person except in those cases where the information given or the copy made or desired is for the purpose of determining the ques-

---

3. Defendant Barrett, as County Clerk, was also a member of the Electoral Board. Ill.Rev. Stat.1971, ch. 46, § 10–9(3).

tion of the exercise of the right to vote." Ill.Rev.Stat.1971, ch. 46, § 6–65. The proper construction of this statute is not at issue here. For purposes of this appeal, it suffices that the statute is ambiguous and arguably condones defendants' conduct with respect to the registration records.

On December 27, plaintiff Wiseman timely filed an objector's petition in opposition to the Berg candidacy. The petition raised numerous objections to both individual signatures and entire sheets of signatures contained in the Berg petition. Challenged signatures were listed in an appendix; the petition requested that the Electoral Board compare such signatures with the original registration records. The petition also recounted plaintiffs' frustrated attempts to obtain access to the records and held forth the possibility that the objections would thereafter be supplemented.

The following day, December 28, the present action was initiated in district court. The complaint asked that plaintiffs be granted immediate access to the original petition and the registration records in order that they might thereby obtain sufficient evidence to effectively challenge the petition before the Electoral Board. In addition, the complaint asked the court to enjoin the Electoral Board from holding hearings on objections to the Berg petition "prior to a date which permits examination of the materials requested herein and proper preparation of the objections on the basis thereof."

The parties' initial skirmish in federal court was inconclusive. An emergency hearing on plaintiffs' motion for a preliminary injunction was held before Judge Decker on December 29. At the conclusion of the hearing the court indicated that it was prepared to rule in plaintiffs' favor on the strength of our opinion in Briscoe v. Kusper, 7 Cir., 435 F.2d 1046 (1970), and requested that the parties prepare an order setting forth the procedures to be followed in conducting the inspection. The following day an agreed order was entered and the complaint was dismissed. The order nevertheless reserved for plaintiffs the right to reinstate their complaint should defendants fail to abide by their agreement. Inspection was to be accomplished before January 5, 1972. The order did not enjoin the Electoral Board from commencing hearings. The Board convened as scheduled on December 31, at which time it continued the proceedings without hearing evidence, until January 5.

On January 4, plaintiffs moved to reinstate the complaint on the grounds that defendants had failed to provide all the information required by the December 30 order. The motion also alleged that the Electoral Board had denied plaintiffs due process of law by refusing to issue certain subpoenas and by deferring until January 5 a motion by objector Wiseman for a second continuance of the objection proceedings. The court deferred ruling on the motion to reinstate until after the Electoral Board's hearing on January 5. At that hearing the Electoral Board denied the motion for a continuance and dismissed the Wiseman objection on the ground that no evidence had been presented in its support.[4]

There followed a return by plaintiffs to federal court. On January 13, the judge regularly assigned to the case, Judge McMillen, entered an order reinstating the complaint. A motion to vacate the decision of the Electoral Board was denied, however. Thereafter Wiseman undertook to obtain judicial review of the Electoral Board action in the state courts, which culminated in an adverse decision by the Illinois Appellate Court on March 17, 1972, four days before the election. See Wiseman v. Elward, 5 Ill.App.3d 249, 283 N.E.2d 282 (1972). In the March 21 election, both Berg and plaintiff Moore were defeated.

4. A detailed account of the proceedings before the Electoral Board is contained in Wiseman v. Elward, 5 Ill.App.3d 249, 283 N.E.2d 282 (1972).

Undeterred, plaintiffs on May 30, 1972, amended their federal complaint to allege that the conduct originally complained of was of a continuing nature, and to seek an injunction requiring defendants "within a reasonable time before any primary or general election in Cook County, Illinois to make available * * * for inspection, copying and photocopying all documents and records of any kind in their possession or control relating to qualifications to vote, to hold public office, and to participate in the electoral process * * *." The district court finally dismissed the action on December 6, 1972, on the ground that the amended complaint failed to state a claim for which relief could be granted. The court stated that the complaint's deficiency "could be termed mootness, or lack of a justiciable controversy, or lack of present injury." It noted that "[w]hether the same or similar situations will arise in the future cannot be known, but even if they do, the circumstances and participants, particularly on the plaintiffs' side, will almost surely be different."

On appeal, the initial issue thus concerns plaintiffs' contention that the district court erred in concluding that the controversy was either moot or nonjusticiable. In substance, the complaint alleges that defendants' past conduct in connection with the 1972 primary election is indicative of a continuing policy by defendant officials which works to deprive plaintiffs of constitutional rights. Accordingly, even though the 1972 election is now history and is not here challenged, the controversy is nevertheless, so plaintiffs assert, both justiciable and alive.

Should we find the case to be justiciable and not moot, we must confront the question whether there exists for these plaintiffs a federal right, constitutional or otherwise, to the discovery of evidence in the custody of a state which might be used, pursuant to procedures established by state law, to challenge the candidacy of persons aspiring to hold public office. *Cf.* Briscoe v. Kusper, 7 Cir., 435 F.2d 1046, 1057 (1970).

Before proceeding to these questions, two issues which are *not* before us need stating. First, plaintiffs do not challenge the constitutionality of the Illinois statutory procedures for objecting to nominating petitions. Even though the brief is replete with references to the difficulty caused plaintiffs by the statutory deadlines, there is no claim that by failing to provide a longer time period for the compilation of evidence prior to filing an objector's petition or conducting hearings thereon, the Illinois Election Code is constitutionally infirm. Likewise, plaintiffs do not allege that § 6–65 of the Election Code, *supra*, is unconstitutional. Rather they assert that, correctly construed, the statute does not authorize defendants' conduct.[5]

Second, plaintiffs no longer contest the proceedings held before the Electoral Board, in which the Wiseman objection was dismissed for failure of evidence. Plaintiffs sought review of the Board's dismissal in state court, alleging that the Board had abused its discretion and denied Wiseman due process of law. The Appellate Court of Illinois thoroughly reviewed the challenged proceedings and concluded as follows:

"* * * While we appreciate the dilemma plaintiff faced, we cannot attribute it to the Electoral Board's exercise of discretion, nor to any denial of Due Process of Law. Rather, plaintiff was to some extent a victim of his own tactical decisions,[6] and,

5. Judge Decker agreed with plaintiffs on this issue. He concluded that the records were relevant to the question of the right to vote and therefore, by the statute's own terms, were not to be regarded as confidential. The agreed order specifically provided that "[d]efendants shall not be deemed to be in violation of any State law by virtue of their compliance with this decree * * *."

6. When requested by the Board to make some showing in support of his objections, prior to ruling on the motion for a continuance, counsel for Wiseman refused, stating he wished to avoid a "bifurcated," unlawyer-

perhaps equally a victim of the limitations inherent in our statutory scheme for challenging primary petitions. * * * " Wiseman v. Elward, *supra*, 283 N.E.2d at 291.

Plaintiffs principally rely on Briscoe v. Kusper, *supra*, and Shakman v. Democratic Organization of Cook County, 7 Cir., 435 F.2d 267 (1970), cert. denied, 402 U.S. 909, 91 S.Ct. 1383, 28 L.Ed.2d 650 (1971), for the proposition that the mere passage of an election does not moot an election-related dispute involving conduct which is "of a continuing nature." See also, Miller v. Kusper, 7 Cir., 445 F.2d 1059 (1971); Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); and *cf.* Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

During oral argument counsel for defendants brought to the court's attention a bill then pending in the Illinois legislature. In somewhat modified form, this bill, designated House Bill 213, was certified by the governor and became law as Public Act 78–934 on November 14, 1973. In our view it is unnecessary to determine the applicability of *Briscoe* and *Shakman* to this case inasmuch as the passage of House Bill 213 has eliminated any question that the conduct originally complained of is of a continuing nature. *Cf.* Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969);

United States v. Alaska Steamship Co., 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808 (1920).

■ As stated previously, defendants throughout this controversy have taken the position that compliance with plaintiffs' request for access to voter records is prohibited by Ill.Rev.Stat. ch. 46, § 6–65, quoted in pertinent part *supra*. House Bill 213 strikes from the Election Code the entire passage relied upon by defendants. In addition, the bill amends § 6–35 to add the following language:

"The registration cards shall be deemed public records [7] and shall be open to inspection during regular business hours, except during the 28 days immediately preceding any election. Registration record cards may also be inspected, upon approval of the officer in charge of the cards, during the 28 days immediately preceding any election. * * * "[8]

Viewing the record as a whole, and in light of the above cited amendments to the Illinois Election Code, we find that the "controversy" here no longer possesses the "immediacy and reality" required for the granting of relief. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). We will not presume that defendants will violate what is no longer an ambiguous statute. The constitutional claim here pressed is a novel and difficult one, involving the interplay

---

like presentation. At the time (January 5), plaintiffs had already achieved access to approximately two-thirds of the registration cards pursuant to the district court order of December 30.

7. Concerning the right to inspect and copy public records under Illinois law, see generally, An Overview of the Law Governing Access to Information Held By Public Agencies in the State of Illinois and the City of Chicago, 68 Nw.U.L.Rev. 223 (1973).

8. It is true that the amended statute does not require that nominating petitions in defendants' custody be made available for inspection. However, it is uncontested that copies of the petition were furnished pursuant to plaintiffs' request prior to the district

court order, albeit after a two-day delay. While unreasonable administrative delay in acting on lawful requests may constitute a denial of due process, see Slate v. McFetridge, 7 Cir., 484 F.2d 1169 (1973), we believe that in the circumstances of this case, the allegation of such two-day delay, by itself, is insufficient to support a due process claim.

With regard to other documents originally sought by plaintiffs, we find (1) the controversy with respect to polling lists was resolved by the parties (see tr., Dec. 29, at page 6), and (2) the request for records of past primary voting, even if not covered by the new amendments, is no longer in controversy in light of Pontikes v. Kusper, 345 F. Supp. 1104 (N.D.Ill.1972), aff'd 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973).

between a complex state statutory election scheme and the developing federal law of political rights. See Briscoe v. Kusper, *supra*, 435 F.2d at 1053–1054. We do not choose to rule abstractly as to whether defendants have violated such federal rights, where plaintiffs are unable to show any likelihood that the conduct complained of will ever be repeated. "The constitutional question, First Amendment or otherwise, must be presented in the context of a specific live grievance." Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969).

Nor is this a case where the impracticality of effective review at the time the injury occurs counsels for an anticipatory ruling. While we sympathize with Wiseman's frustrated efforts to obtain meaningful review of the Berg petition, his ultimate failure did not, as plaintiffs contend, follow inevitably from the initial refusal of access. Within two days after their complaint was filed, plaintiffs were the beneficiaries of a federal court order granting them essentially all that they had requested as against these defendants. The intent of that order was frustrated by several factors, none of which would necessarily or even likely be repeated in any future litigation.[9] If defendants should resume conduct which plaintiffs regard as a violation of their federal rights, despite new §§ 6–35 and 6–65 of the Election Code, we see nothing to indicate that the problem will evade effective review at that time. *Cf.* Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.

Ed.2d 214 (1969) (Mr. Justice Brennan, dissenting).

 Aside from any question of mootness, which we do not here determine, the bald fact that §§ 6–35 and 6–65 grant plaintiffs the anticipatory relief sought by their amended complaint leaves no justiciable controversy remaining before us and, absent a live federal question, we have no jurisdiction to grant the relief requested.

Accordingly, the dismissal of this action by the district court is now affirmed.

Affirmed.

---

9. Plaintiffs admit in their brief that it was "feasible for the defendants to produce large portions of the information ordered by Judge Decker in a few days and for the plaintiffs to inspect and copy that material equally quickly." The ordered discovery was not completed within the agreed time because defendants were unable to locate approximately one-third of the registration cards in their master file. Precinct binders, also in defendants' custody, contained duplicate cards but were not included within the scope of the order. In addition, neither party at the time the order was entered contemplated

that such a large percentage of the cards (95 per cent) would be in the custody of a single defendant (the Commissioners). See note 2, *supra*. Finally, there was some dispute regarding the most efficient method for conducting the inspection. Although plaintiffs now imply that the failure to complete inspection was owing to defendant Commissioners' bad faith, counsel admitted during the course of the January 4 hearing that "there was fantastic mutual cooperation," and that the delay was not the fault of the Commissioners.