The SEA RANCH ASSOCIATION, a California non-profit corporation, et al., Plaintiffs,

v.

The CALIFORNIA COASTAL COMMISSION, et al., Defendants.

No. C–74–1320 SW.

United States District Court, N.D. California.

Sept. 28, 1982.

**242**

Malcolm A. Misuraca, James L. Beyers, Christopher G. Costin, Misuraca & Beyers, Santa Rosa, Cal., for plaintiffs.

Noble K. Gregory, Robert M. Westberg, Brian D. Bellardo, Pillsbury, Madison & Sutro, San Francisco, Cal., for Sea Ranch Ass'n, plaintiff.

Patricia Sheehan Patersen, Deputy Atty. Gen., San Francisco, Cal., for State of Cal.

Gregory A. Thomas, Steven F. Hirsch, Natural Resources Defense Council Inc., San Francisco, Cal., for Natural Resources Defense Council Inc.

Roger Beers, Kathryn B. Dickson, San Francisco, Cal., for C.O.A.A.S.T., William Kortum, and Charles Rhainhart.

Before DUNIWAY, Circuit Judge, EAST and WILLIAMS, District Judges.

## OPINION

Spencer WILLIAMS, District Judge:

This litigation has a long and complicated past, much of which is documented in prior opinions from this and other courts.[1] To clarify, however, we begin with a brief review of the case's underlying facts and procedural history.

In 1974, plaintiffs[2] sought declaratory and injunctive relief against defendants, contending that application of the California Coastal Zone Conservation Act of 1972[3] was unconstitutional as applied to them. The Act established a state Coastal Commission and six regional commissions, charged with the preparation of a comprehensive land use plan for the California coastal zone. Pending completion of this plan, the Act empowered the state and regional commissions to regulate development on or near the coast. Anyone wishing to "perform any development" along the coast first had to obtain a permit from the appropriate regional commission. Exemptions

---

1. *Sea Ranch Assoc. v. California Coastal Comm'n,* 396 F.Supp. 533 (N.D.Cal.1976) (three judge court), *mod. on appeal,* 537 F.2d 1058 (9th Cir.1976); *Oceanic California, Inc. v. North Central Coast Regional Comm'n,* 63 Cal. App.3d 57, 133 Cal.Rptr. 664 (1976), *cert. denied and appeal dismissed,* 431 U.S. 951, 97 S.Ct. 2668, 53 L.Ed.2d 267 (1977); *Sea Ranch Assoc. v. California Coastal Comm'n,* 527 F.Supp. 390 (N.D.Cal.1981) (three judge court), *vacated and remanded,* 454 U.S. 1070, 102 S.Ct. 622, 70 L.Ed.2d 606 (1981).

2. Plaintiffs in this litigation are The Sea Ranch Association, a nonprofit organization consist-

ing of all Sea Ranch lotowners, and certain individual property owners. For convenience, they are referred to in this opinion simply as Sea Ranch.

3. At the time of this court's original decision, the Coastal Zone Conservation Act of 1972, former California Public Resources Code §§ 27000 *et seq.,* was in effect. The 1972 Act was superseded by the California Coastal Act of 1976, California Public Resources Code §§ 30000 *et seq.* The basic thrust of the environmentally protective policies of the 1972 Act remain unchanged in the 1976 statute.

from this process were allowed only for development approved and begun prior to passage of the Act.

Sea Ranch maintained that this system of regulation violated their federal constitutional rights by taking their property for public use without just compensation and by denying them due process and equal protection. This court abstained from addressing the federal issues raised in the suit pending state court resolution of relevant state law issues.[4] The Ninth Circuit affirmed the abstention "[t]o the extent that the federal complaint alleged a vested rights exemption for the entire Sea Ranch project," but dismissed the complaint insofar as it alleged individual claims for exemption since none of the individual property owners had applied for an exemption from the permit process.[5]

After the Circuit decision, the California Court of Appeals held that the developer of the Sea Ranch project did not have a vested rights exemption to complete the development without first obtaining the necessary permits from the appropriate regional commission.[6] An appeal of this decision was denied.[7] The holding thus foreclosed further consideration by this court of the claims raised in Sea Ranch's first complaint.

Sea Ranch then filed an amended complaint seeking similar relief under the California Coastal Act of 1976 which replaced the Coastal Zone Act in January of 1977. Thereafter, plaintiffs filed a motion seeking partial summary judgment while defendants filed a motion for dismissal of the action or, alternatively, for abstention once more. At the time of these motions, final action had been taken on the permit applications of thirty-two Sea Ranch property owners. All had received permits contin-

gent on the fulfillment of certain project-wide conditions which the Coastal Commission had developed as a means of regulating full buildout at Sea Ranch.[8] Sea Ranch's summary judgment motion addressed two of these overall conditions—public beach access and view easements. Sea Ranch maintained that imposition of these conditions constituted a taking of their property without just compensation since (1) no individual lot owner was capable of complying with the conditions and (2) the conditions were imposed with no consideration given to the relationship, or lack thereof, between a particular application and the conditions imposed.

Oral argument on the parties' motions was held on April 6, 1979 before the full panel. While the matter was under submission, the California State Legislature enacted Assembly Bill 2706.[9] The Bill, commonly referred to as the Bane Bill, was an offer from the state to settle this litigation. In essence, the state offered to pay Sea Ranch $500,000 in exchange for substantially the same public access required by the Coastal Commission's overall conditions. The Bill also established certain construction criteria in particularly scenic areas of the development. Finally, the Bill provided that upon acceptance of its terms by Sea Ranch, single-family home development on legally existing lots would be "exempted" from further regulation under the Coastal Act. Sea Ranch was given until July 1, 1981 to accept the proposed settlement by depositing into escrow all deeds and documents necessary to convey the required easements to the state.

The Bill went into effect on October 1, 1980. On April 7, 1981, this court found in favor of defendants and on May 21, 1981,

---

**4.** *Sea Ranch Assoc. v. California Coastal Comm'n,* 396 F.Supp. 533 (N.D.Cal.1976), *mod. on appeal,* 537 F.2d 1058 (9th Cir.1976).

**5.** 537 F.2d at 1064.

**6.** *Oceanic California, Inc. v. North Central Coast Regional Comm'n,* 63 Cal.App.3d 57, 133 Cal.Rptr. 664 (1976), *cert. denied and appeal dismissed,* 431 U.S. 951, 97 S.Ct. 2668, 53 L.Ed.2d 267 (1977).

**7.** *Id.*

**8.** These project-wide conditions generally related to (1) water supply, (2) septic tank placement, (3) internal roadways, (4) site and design limitations, (5) public access, and (6) view easements.

**9.** California Public Resources Code §§ 30610.6.

entered judgment dismissing the action in its entirety. On June 5, 1981, plaintiffs appealed the decision to the United States Supreme Court.

One week later, on June 12, 1981, a state court action was filed in an attempt to block implementation of the Bane Bill settlement on the ground that passage of the Bill violated numerous provisions of the California State Constitution.[10] The parties initiating this action were a local environmental group, Californians Organized to Acquire Access to State Tidelands (C.O.A.A.S.T.) and two private individuals. On June 29, 1981, Sea Ranch deposited into escrow the required documents and the state, in turn, deposited $500,000. On July 1, 1981, the state court denied a motion for a preliminary injunction to restrain the closing of the escrow. Escrow closed on July 24, 1981. The deeds were recorded and title to the easements vested in the state. Due to the C.O.A.A.S.T. litigation, the escrow instructions provided that the state funds would be held by the title company until a final determination of the Bane Bill's validity.

On October 20, 1981, a motion was made before the Supreme Court to dismiss the appeal on the ground that implementation of the Bane Bill effected "a complete accord and satisfaction of the dispute concerning permits and easements at the Sea Ranch." [11] On November 18, 1981, the Supreme Court entered the following order:

> The judgment of the United States District Court for the Northern District of California is vacated. The case is re-

manded to the court in order that it may consider whether the case is moot in light of the enactment of [the Bane Bill].[12]

The matter was thus sent back to this court for further deliberation. On December 17, 1981, Sea Ranch filed a motion to join as parties in this action the C.O.A.A.S.T. plaintiffs. According to Sea Ranch, the remand order mandates that this court determine whether the Bane Bill meets state law standards before deciding whether the litigation is moot. Plaintiffs further contend that a full resolution of the mootness question is not possible if the C.O.A.A.S.T. plaintiffs "remain free" to pursue their state court action to its conclusion, and that, absent joinder of these parties, the possibility of inconsistent results subjects all involved to a substantial risk of inconsistent obligations.

Defendants and the C.O.A.A.S.T. litigants oppose the joinder motion. In addition, defendants have once more moved for dismissal of the case or for a stay pending the final outcome of the on-going state court litigation. Defendants contend that implementation of the Bane Bill, now in progress, irrevocably ends the underlying controversy in this case regardless of whether the Bill is ultimately invalidated. Alternatively, they seek abstention, arguing that a state court decision would most likely modify or eliminate the need for further litigation in this forum.

We begin by taking up the question of mootness.

█ The concept of mootness can be traced to Article III, § 2's case or contro-

---

**10.** *C.O.A.A.S.T. v. State Coastal Conservancy, No. 781470 (Cal.Super.Ct., filed June 12, 1981). Joined as real parties in interest in the lawsuit are the Sea Ranch Association and Oceanic California, Inc., the developer of Sea Ranch. The complaint alleges that the Bane Bill is unconstitutional in that:*

> (1) it constitutes a gift of public money or other things of value to an individual or corporation in violation of Article XVI § 6 of the California Constitution;
> (2) it constitutes an invalid local or special statute in violation of Article IV § 16 of the California Constitution;

> (3) it constitutes a violation of the separation of powers mandated by Article III § 3 of the California Constitution;
> (4) it violates Article X § 4 of the California Constitution which concerns public access to the navigable waterways of the state; and
> (5) it constitutes an invalid urgency statute in violation of Article IV § 8(d) of the California Constitution.

**11.** N.R.D.C. and Sierra Club Motion to Dismiss or Summarily Affirm, p. 5.

**12.** *Sea Ranch Assoc. v. California Coastal Comm'n,* 454 U.S. 1070, 102 S.Ct. 622, 70 L.Ed.2d 606 (1981).

versy requirement.[13] A case is considered moot if it has "lost its character as a present live controversy of the kind which must exist if [courts] are to avoid advisory opinions on abstract propositions of the law." [14] The doctrine serves two purposes:

The first is that courts, for reasons of judicial economy ought not to decide cases in which the controversy is hypothetical, a judgment cannot grant effective relief, or the parties do not have truly adverse interests (citations omitted). Second, it is a premise of the Anglo-American judicial system that the genuinely conflicting self-interests of parties are best suited to developing all relevant material for the court (citations omitted). Hence, when the circumstances out of which a controversy arises change so as to raise doubt concerning the adversity of the parties' interests, courts ordinarily dismiss cases as moot, regardless of the stage to which the litigation has progressed.[15]

■ The question then is whether an actual controversy exists between the present parties as to any issue raised in plaintiffs' amended complaint. Ordinarily, a settlement of all claims raised in a particular case moots that litigation.[16] This is true "even if the parties remain in dispute over the particular issue[s] they are litigating." [17]

■ No one seriously disputes that the Bane Bill was intended by the state as an offer of settlement.[18] Moreover, all agree that Sea Ranch voluntarily accepted this offer by depositing into escrow the required documents. Despite the C.O.A.A.S.T. litigation, no injunction has been issued preventing implementation of the settlement. To date both sides have acted in good faith in seeking to abide by the terms of the Bill. Plaintiffs have conveyed title to all the specified easements, construction has re-

---

**13.** *Richardson v. Ramirez,* 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974). Most recently, in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982), the Supreme Court held:

Article III of the Constitution limits the "judicial power" of the United States to the resolution of "cases" and "controversies." The constitutional power of federal courts cannot be defined, and indeed has no substance, without reference to the necessity "to adjudge the legal rights of litigants in actual controversies." *Liverpool Steamship Co. v. Commissioners of Emigration,* 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885). The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process. The judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts. The power to declare the rights of individuals and to measure the authority of governments, this Court said 90 years ago, "is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy." *Chicago & Grand Trunk R. Co. v. Wellman,* 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892). Otherwise, the power "is not judicial . . . in the sense in which judicial power is granted by the Constitution to the courts of the United States." *United States v. Ferreira,* 13 How. 40, 48, 14 L.Ed. 42 (1852).

While Article III is the primary source of the mootness doctrine, commentators and courts have also recognized that "mootness decisions frequently reflect avowedly flexible doctrines of remedy and judicial administration, "not necessarily a part of Article III. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction, § 3533, p. 266 and cases cited therein.

**14.** *Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1968) (per curiam); *California v. San Pablo & Tulare R.R.,* 149 U.S. 308, 13 S.Ct. 876, 37 L.Ed. 747 (1893).

**15.** *Marchand v. Director, U.S. Probation Office,* 421 F.2d 331, 332 (1st Cir.1970).

**16.** *Local No. 8–6 Chem. and Atomic Workers Int'l Union v. Missouri,* 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960); *California v. San Pablo & Tulare R.R.,* 149 U.S. 308, 13 S.Ct. 876, 37 L.Ed. 747 (1893); *I.T.T. Rayonier, Inc. v. United States,* 651 F.2d 343, 345 (5th Cir.1981).

**17.** 651 F.2d at 345.

**18.** For example, the preamble to the substantive provisions of the Bane Bill states that the Bill was enacted because "it is in the public interest to provide by statute for the resolution of the lengthy and bitter dispute involving development of existing legal lots . . . [at] the Sea Ranch." Cal.Pub.Res.Code § 30610.6(a).

sumed at Sea Ranch on numerous individual lots and the Coastal Commission has relinquished all permit authority over the project.[19]

As these facts show, there is no present legally cognizable dispute between Sea Ranch and the defendants as to the Coastal Commission's power to regulate construction of single-family homes at Sea Ranch.[20] The litigation, therefore appears to be fully mooted. There is no "live" controversy between the parties, their interests are no longer adverse and any decision by this court as to the issues raised in Sea Ranch's amended complaint would be an advisory one at best.

**19.** As noted earlier, the $500,000 is being held in an escrow account pending a "final judgment" in the C.O.A.A.S.T. litigation. Sea Ranch contends that this fact alone prevents the case from being moot. We disagree. The focus of Sea Ranch's mootness defense is that the case is not moot so long as a state challenge remains as to the Bane Bill's constitutionality. A decision overturning the Bane Bill, however, would result in the money going back to the state regardless of whether it had been held in escrow or actually paid to Sea Ranch. The fact that the money is in escrow, therefore, does not, by itself, make the settlement a "tentative" or "incomplete" one, at least not for mootness purposes. Moreover, plaintiffs voluntarily agreed to have the funds held in escrow. They could have refused to accept this term of escrow and blocked its closing. At that point, there would have been no settlement and the case would not be moot. As it stands now, however, we find that the mere fact that the funds are in escrow does not serve to make the settlement of this lawsuit any less real or binding.

**20.** *Hall v. Beals,* 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1968) (per curiam) (litigation challenging six-month voter residency requirement mooted by passage of new two-month standard since all appellants satisfied the new standard); *Independent Voters of Illinois v. Kusper,* 490 F.2d 1126, 1131–32 (7th Cir.1974) (state legislation passed making voting information available to the public mooted litigation seeking substantially the same access); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3353 (1975).

**21.** *Omaha National Bank v. Nebraskans for Independent Banking,* 426 U.S. 310, 96 S.Ct. 2616, 48 L.Ed.2d 658 (1976) (per curiam) *and on remand, Nebraskans for Independent Banking v. Omaha National Bank,* 423 F.Supp. 519 (D.Neb.1976); *Diffenderfer v. Central Baptist*

Plaintiffs maintain, however, that a finding of mootness is "premature" absent an initial decision on the Bane Bill's constitutionality. We disagree. Normally, a plaintiff is permitted to amend his complaint to challenge a newly enacted statute if that statute would otherwise moot an attack on the prior law.[21] Such challenges have been permitted in federal court even if the only credible challenge to the new statute is under relevant state constitutional standards.[22] In all of these cases, however, the validity of the new law was a hotly contested issue between the parties already before the court.[23] The question presented thus met the requirements of Article III, § 2.

*Church,* 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972).

**22.** *Nebraskans For Independent Banking v. Omaha National Bank, supra.*

**23.** For example, in *Nebraskans for Independent Banking,* the case most heavily relied on by plaintiffs, the substantive federal issue was whether the Omaha National Bank was operating branch offices in the State of Nebraska in violation of both state and federal law. Relevant federal law mandated that a national bank could engage in branch banking only to the extent that state law authorized state banks to do so. While the matter was on appeal, the state passed a new law which redefined the type of facilities a bank could operate without violating the state law limitation on branch banking. The Supreme Court remanded the case for further consideration in light of this new law.

Plaintiff then made a motion in the district court to strike the new law on the ground that it was passed in violation of state constitutional provisions. The court considered but rejected defendant's related motion for abstention. Instead, the court asserted pendent jurisdiction over the issue and overturned the statute for the reasons advanced by plaintiff.

The important distinction between Nebraskans and the instant litigation is obvious. In Nebraskans, the issue of the state law's validity was a live controversy between present parties with strong, adverse interests. The minimum requirements of Article III were thus met and the court properly exercised pendent jurisdiction over the issue. As noted, in the instant case, the validity of the Bane Bill is not a live controversy between the parties now before the court. Assertion of pendent jurisdiction over this issue would therefore not be an appropriate exercise of this court's authority.

There has been, however, no showing in the present litigation that the Bane Bill's constitutionality is an issue of dispute between the instant parties. To the contrary, all the litigants now before the court have expressed, through their words and actions, an interest in having the Bane Bill upheld. This is not a case in which the terms of a new statute or settlement have been unilaterally imposed on a complaining party. Instead, Sea Ranch voluntarily agreed to be bound by the Bane Bill's terms. Moreover, it is apparent that both sides have acted diligently and in good faith to assure the full implementation of the Bill.

Article III, § 2 requires, at a minimum, that a "dispute sought to be adjudicated [must] be presented in an adversary context and in a form historically viewed as capable of judicial resolution."[24] A valid challenge to the Bane Bill may exist. In the context of the present litigation, however, this is simply not the proper forum for resolving that issue.

While not a "live" controversy between the present parties, the Bane Bill's constitutionality is certainly a real issue between these litigants and the C.O.A.A.S.T. plaintiffs. Joinder of the C.O.A.A.S.T. plaintiffs, as sought by Sea Ranch, would provide the court with an "adversary context" in which to hear and resolve the matter. The court, however, has no authority to require these parties to be joined unwillingly in this lawsuit for the sole purpose of litigating their state law claims. Sea Ranch's motion is brought pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. Rule 19, however, provides no independent basis for assertion of federal jurisdiction over an unwilling party. Instead, jurisdiction must already exist before the Rule can be applied.[25]

Based on the case law relied on by Sea Ranch, it appears that the joinder motion is premised on the existence of pendent jurisdiction over the state law challenge to the Bane Bill. As discussed, federal courts have discretion to exercise pendent jurisdiction to hear state law claims between parties already before the court. It is the rule in this Circuit, however, that "parties may not be added to an action absent an independent jurisdictional base for inclusion and that pendent party jurisdiction will not substitute for complete diversity or a federal question."[26] Pendent jurisdiction then covers only claims, not parties.

Alternatively, Sea Ranch maintains that federal question jurisdiction exists over the C.O.A.A.S.T. plaintiffs. We disagree. The only remaining federal question in this case is whether acceptance and implementation of the Bane Bill's terms moots this litigation. We find that it does. The settlement offer has been accepted by Sea Ranch as a complete accord and satisfaction of the present controversy and performance has been tendered by all sides. The fact that the Bane Bill is vulnerable to a state constitutional challenge does not alter this result nor does it transform that challenge into a federal question.[27]

---

24. *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968).

25. Fed.R.Civ.Pro. 82: "These rules shall not be construed to extend or limit the jurisdiction of the United States courts or the venue of actions therein."

26. *Safeco Insurance Co. v. Guyton*, 692 F.2d 551, 555 (9th Cir.1982). See also cases cited therein, p. 555, n. 5.

27. In support of this extraordinary extension of federal question jurisdiction, Sea Ranch chiefly relies on one case, *N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 438 F.Supp. 440 (E.D.N.Y.1977). Plaintiffs in that action sought to vindicate the constitutional rights of a class of retarded persons in New York State. The case settled after the state agreed to take certain specific actions to protect the rights of the class members. After the settlement was finalized by an order of the court, a union of state workers filed a state court action, charging that parts of the settlement violated state law. The state then brought a motion in the original district court, seeking joinder of the union for the limited purpose of deciding its post-settlement rights under state law.

The motion was granted but not on federal question grounds. Instead, the court found that ancillary jurisdiction covered all the claims raised by the union. Two reasons were given in support of this finding. First, the court found that ancillary jurisdiction exists over third parties if these additional parties are somehow interfering with a prior judgment or

Moreover, even if jurisdiction over this question was asserted and the C.O.A.A.S.T. plaintiffs were involuntarily joined, the court would still not be presented with a justiciable controversy. Sea Ranch's only concern is the Bane Bill's uncertain state constitutionality. A decision by this court on the Bane Bill's constitutionality, however, would not resolve or lessen this uncertainty since neither federal supremacy nor preemption would preclude a state court, in the C.O.A.A.S.T. or any subsequent litigation, from reaching a contrary and fully enforceable result. Absent the power to fashion effective and permanent relief, the issue of the Bane Bill's constitutionality is simply not a justiciable controversy in this forum, between these parties, in this litigation.

The court is well aware of the need to end this protracted and lengthy litigation. This concern, however, cannot override the jurisdictional limitations placed on the court by Article III, § 2. At present, no federally cognizable dispute remains between the parties. There is the possibility, of course, that at some time in the future the agreed upon settlement may be revoked by the state courts. If the Bane Bill is overturned, it is also possible that the Coastal Commission may once again attempt to impose objectionable constraints on development at Sea Ranch. These possibilities, however, are too remote and speculative to permit this court to pass on any of the substantive issues raised in Sea Ranch's amended complaint. If at some future date the same or similar restrictions are imposed, effective

federal review can be instituted at that time by the filing of a new lawsuit. In the meantime, however, we find that the instant litigation is moot. It is therefore dismissed in its entirety.

EAST, Senior District Judge, dissenting:

In order to have a ready, clear backdrop for my view, I reiterate in chronological order the decisive events.

Prior to final judgment herein, the California legislature enacted the Bane Bill, effective October 1, 1980, which was intended to be a form of just compensation for the acknowledged taking of Sea Ranch's property interest by the State.

Final judgment adverse to Sea Ranch was entered herein and was appealed to the Supreme Court of the United States.

Through litigation in the California courts, third parties attacked the constitutionality of the Bane Bill under the California Constitution.

Pursuant to the terms of the Bane Bill, Sea Ranch executed and delivered to escrow deeds of transfer of property interest to the State and, in turn, the State deposited the consideration therefor in the amount of $500,000 in escrow. The escrow closed and Sea Ranch's deeds of conveyance were delivered to the State. However, the State's money in the amount of $500,000 was retained and still remains in escrow *pending final adjudication of the Bane Bill's constitutionality.*

---

remedy of a court. Alternatively, the court found that ancillary jurisdiction extends to all "necessary parties," as defined in Fed.R.Civ. Pro. 19(a), even if no federal question or diversity jurisdiction is present over these parties.

The case, therefore, does not support Sea Ranch's argument that this court can assert jurisdiction over the C.O.A.A.S.T. plaintiffs on the basis of a federal question. The only arguable relevance of this case, then, is the court's finding that ancillary jurisdiction extends to Rule 19(a) necessary parties not already subject to a court's original jurisdiction. This conclusion, however, is no longer an accurate statement of the law, if in fact it ever was. In *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 decided

in 1978, the Court considered the appropriate limitations inherent in the ancillary jurisdiction doctrine. The plaintiff in *Kroger* sought to assert a non-federal claim against a non-diverse third-party defendant on the basis of ancillary jurisdiction alone. The Court, however, held that federal courts lack the authority to consider such claims absent an independent basis for subject matter jurisdiction. The reasoning in *Kroger* is fully applicable to the facts of the present case. We therefore hold that ancillary jurisdiction, by itself, is an insufficient jurisdictional basis on which to grant Sea Ranch's joinder motion. *See* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3523 (1980 Supp.).

The Supreme Court of the United States in Sea Ranch's appeal vacated this court's final judgment and remanded the cause to this court for consideration as to "whether the case is moot in light of" the Bane Bill.

It follows that the original live controversy among the parties hereto has been returned to this court. If the cause is determined to be moot by reason of the Bane Bill, this cause is to be dismissed. If this cause is not determined to be moot under the Bane Bill, this court must reaffirm its final judgment or reconsider the same.

I take it that the Supreme Court's directive to us is that we consider not the mere language of the Bane Bill, but the full force and effect of the legislation upon the live litigation involved herein. I take the position that no effect has been accomplished to date. Likening the provisions of the legislation to an executory contract among the parties hereto, the same has not been mutually executed. True, Sea Ranch has met their obligations under the legislation, but the State's participation in the payment of the consideration for the transfers, namely, the $500,000, is in a state of limbo. The clear language of the Bane Bill is on the books, but nothing conclusive has occurred by virtue of it.

As the majority correctly points out, this court has no jurisdiction to adjudicate the issue of the constitutionality of the Bane Bill under California's Constitution. We stand in the same position as does the escrow agent. We must await the final adjudication of the issue of the constitutionality of the Bane Bill by the California courts before we can perform.

It is true that there exists no dispute among the parties hereto over the constitutionality of the Bane Bill. That dispute wages elsewhere among third parties, and I believe the absence of such an issue is of no consequence to us. The hallmark is that the original dispute among the parties hereto, as it existed prior to the now vacated final judgment herein, is with us.

It appears to me that the majority's conclusion to dismiss this case for mootness is based upon an inconsequential premise: an unenforceable adjudication of the constitutionality of the Bane Bill or an anticipatory feeling that the California courts will in the future so declare.

I must respectfully dissent from the conclusion of mootness and dismissal. I would order abstention from further proceedings herein, with the reservation of jurisdiction, pending the final adjudication of the issue of the constitutionality of the Bane Bill by the California courts. At that time and only then can this court follow the mandate of the Supreme Court by readily determining the lawful force and effect of the operation of the Bane Bill upon the cause herein and determine whether this cause is moot.

I also deplore the time length of this litigation to date, as well as the further delay in the event of abstention. However, I take solace in the fact that the cause of the delay cannot be laid at the door of the court. In my view, abstention is forced upon us and the parties hereto by the action of third parties. We have no control over the institution or the progress of the state court proceedings. The required abstention herein will neither delay nor hasten the ultimate day of the state court adjudication of the issue of the constitutionality of the Bane Bill.